We will hear our next case which is number 23-2019 Robert Whittaker, III v. Howard County, Maryland and Mr. Shaw when you're ready. May it please the court. Good morning. Good morning, Ms. Purdy. My name is Adam Shaw. I represent Robert Whittaker in this case and I would like to preserve five minutes of my time for rebuttal. This case is before the court for one reason and that is because the district court resolved factual disputes that must be resolved by the jury in an employment discrimination case. At summary judgment the court weighed the facts, weighed the evidence, made credibility determinations and even drew inferences against Mr. Whittaker on issues regarding his performance, regarding whether Howard County's legitimate expectations were in fact legitimate or genuine, and regarding whether Howard County treated similarly situated or younger employees more favorably. Under Tolan and under this court's precedents in Sipowich and Haines that is reversible error and we therefore ask that this court reverse the lower court's decision and remand the case for jury trial. Can I ask you just almost like big picture and maybe even colloquially sort of what is your theory of what happened here? I mean there is a lot of documentation in this record of performance concerns. It's not just Captain Welsh, there's a number of instructors documenting some concerns. So is the theory that they are all biased against Mr. Whittaker because of his age? Are they just mistaken about whether he is performing adequately? Like what happened here in your view? What is the story you would tell? Judge Harris there were allegations of direct discrimination in the complaint and there are allegations and a theory that there is an age-based animus, a culture of age-based animus. So it's in the culture, it permeates the culture is the problem here. That is correct and there is some discussion in the briefs about whether that issue was raised in the lower court. I'm not sure if the term corporate culture was used in the lower court but there certainly were allegations that there were negative biases towards older employees within the department itself. So the theory is all of the people who are finding these performance concerns whether they knew it or not that was a that was sort of an age-based assessment. It's not the theory is not that Welsh wanted him fired because he doesn't believe in older firefighters and then everyone went back and papered the record. That's not your theory. Your kind of working theory is they were all discriminating based on age. That is correct Judge Harris. In fact there is evidence in the record that was discussed by the lower court that sort of lends to the credibility of that argument. For example if you look at the joint appendix in pages of 1028 through 38 there's this Facebook post which I'm sure the court has seen in the briefs that was posted by one of the senior leaders of Howard County Fire Department about a year later regarding the acceptance and training of an employee of a firefighter age 51 in a different state. But you would agree that I mean that wasn't related to Mr. Whitaker. I mean that the post was remote and not related to Whitaker. Judge Benjamin I don't know if I would agree that it's remote and unrelated. I would certainly agree that it is not directly related to Mr. Harris himself. It related to a reasonable jury could most certainly look at that piece of evidence and say here's one of the senior leaders within the Howard County Fire and Rescue Service approximately one year after Mr. Whitaker's termination saying out loud and unequivocally that he does not believe people who are essentially in the same age group as Mr. Whitaker should ever be firefighters. There's also evidence in the record that another one of the instructors at Howard County Fire and Rescue Services referred to directly referred to Mr. Whitaker during training as the old guy telling him you don't do half bad for an old guy. So the idea is yes that there is this general animus towards older firefighters and the record bears that out. So if we look for example at the county's expectations or what it proffered as its legitimate expectations of how it treated him because of failure to perform certain tasks under stress. So take a big picture view for just a moment. Mr. Whitaker was selected from a pool of about 1,800 applicants for about 20 positions in training unit 30. He started that in January of 2018. Months go by and he's progressing through training just like all of the other trainees all of whom were under age 40 not in the class. So he's certified for example in ice rescue operations. He's certified as an EMT. He's certified as an emergency vehicle operator. They're certifying him and then later they come and say he doesn't perform well under stressful circumstances. Why then did Howard County continue to certify him at each stage of the training all the way up to firefighter one about three weeks before he was terminated and then firefighter two which is sort of the pinnacle at least of the physical more demanding part of training three days prior to terminating him. That is classic shifting of the goalpost and it smacks of pretext when throughout the training this is just like happened in Sempiewicz and Haines and in Loveless all cases where this court ruled in favor of the employee where the employer says you're not meeting our legitimate expectations after the fact they give this post hoc rationalization but all throughout the they're saying here's your next certification you're meeting training they gave him two student counseling forms they're in the record you can see them in the record they're at pages 1144 and 1187 in the record those were two skills-based counseling forms okay so this is show let me ask you how you characterize these certifications are they minimum requirements or it or are they greater than that here's my concern I guess we'll know if there's any evidence that younger recruits achieved the same certificates but were either terminated or asked to resign I don't know whether the record contains that or not but first what are these certificates are they just minimum requirements or there's something more than that well your honor this is a great example of a factual dispute that exists in the record because the county certainly seems to assert that they are bare minimum requirements but the record also bears out that every other trainee not in the protected class who obtained those certifications is now a firefighter with Howard County I mean this can be I think can be compared to like military type training where you go through training if you pass each stage of training there's a graduation date if you let me use your military example just a little further let's take the recruit that goes in meets all these objective requirements and certificates like marksman etc then they're placed into a combat situation and they freeze can that kind of conduct be the freezing or the hesitation or whatever be considered in an employment case like this I mean there was a hook and ladder incident that he either froze or I don't know exactly what happened but can they can that be considered that subjective stuff judge Floyd those can certainly be considered at that time so to just carry your hypothetical one step further I think that would make sense if for example mr. Whitaker had been permitted to complete the training had become a firefighter and then a year later in a live-fire scenario it demonstrated some difficulty with performing under stress but that's not what happened here I would also mention in reference to your your question judge Floyd that the record shows that other younger trainees so for example if you look at trainee Avery who is now a firefighter with Howard County in the record at pages 811 and 8 to 812 he discussed in his deposition under oath that he too had difficulties with ladders the county has and this came up in in depositions and is noted in the record that the county has a process for providing feedback on these types of deficiencies so if we look at the two feedback forms that our student counseling forms that mr. Whitaker received the first was on April 16th of 2018 he had an issue with the ladders yet or I think in that is that case actually had an issue with a mace so he had an issue he received additional training then he objectively passed the maze then he achieved the certification and then he was moved on to the next block of training at that point whatever performance issue rose in connection with the maze or the ladder or whatever these other issues were are moot and irrelevant and most certainly a jury could definitely look at that and say okay he had a problem with mazes and ladders so forth there was also testimony that all of the trainees had those kinds of problems but the jury can certainly look at that and say how how does it make sense from a factual standpoint that Howard County is going to tell its trainees we have a process for offering you additional training and getting you up to speed if you have a deficiency then we're going to certify you in advance you to the next round of training but then three days after we certify you at level firefighter to we can still come back and say oh but all of those mistakes that you made before pre certifications are still counting against you today and therefore we're terminating you that is a I'm sorry I didn't mean to cut you off but I so it does seem and I think this is what we've been talking around that there is this question the judge Floyd raise are these so the county's answer is well those are just minimum qualifications like that doesn't mean you were ready to be a firefighter and I couldn't find anything in the record about whether like this happens you know occasionally all the time that people pass firefighter level 2 and are then told notwithstanding that you actually don't meet our performance requirements yes you have been certified at every level you just passed level 2 but that all that is is minimum requirements and you have not satisfied the additional requirements is there anything in the record that says whether this is a a thing that happens regularly a thing that has happened at least a few times before or this is the first time it's ever happened judge Harris I don't think there's anything in the record regarding the frequency with which firefighter trainees are terminated after like firefighter to specifically for example for failing to meet performance standards correct what is in the record however is evidence that other trainees receive these student counseling forms so just kind of tying this back to judge Floyd's question there's this process by which the count counseling and feedback is given the county actually has two sort of avenues it has the student counseling forms and it has a demerit system now there's evidence that mr. Whitaker never received a single demerit throughout the course of his training and the county asserts that that's because they don't use that system but the system that they do use is the student counseling system and there's evidence in the record that other firefighter trainees received student counseling and had issues through training and either were treated more favorably or continue to advance their training so a couple glaring examples of that particularly with regard to the the claim that mr. Whitaker was insubordinate there's evidence in the record that another firefighter who is with the county today mr. Rohr this is in the joint appendix at page 793 to 794 was actually unlike mr. Whitaker given formal counseling for insubordination if we look at the the counseling that mr. Whitaker was given he received two forms and both were skills based so the county can give you a student counseling for for example for skills for attendance for behavior for tardiness if we look at the two times mr. Whitaker received formal counseling they were skills based then we look at another younger firefighter mr. Rohr who was expressly written up for insubordination there was another instance in deposition testimony in the record where that same firefighter mistreated a fellow trainee to the point that he made her cry when she was in a leadership role in the class in front of the instructors that younger firefighter is still a firefighter with Howard County today the jury can look at that and say Howard County treated the younger firefighter one way and the older firefighter mr. Whitaker a different way that is plainly within the realm of McDonnell Douglas part 3 which requires that the which permits the plaintiff to show that the reasons offered as legitimate you know legitimate reasons for terminating the employment or adverse action was a show only prime official case I mean I think you've got some a good showing but the Fourth Circuit law under the McDonnell Douglas test when you switch over to the employer responding it's pretty tough on you isn't it well your honor I don't know that I would frame it as pretty tough I understand what you're saying there is I mean there is the whole point is of course to shift the burden that's what McDonnell Douglas does but nevertheless under under Tolan and under Anderson versus Liberty Lobby and this court's precedent on summary judgment the the district court is still required to draw inferences in favor of the non-moving party so yes the plaintiff does have to introduce enough factual evidence to demonstrate a genuine dispute of material fact even at part 2 and part 3 of the McDonnell Douglas test but on this record there's plenty of evidence that a jury could look at to say there's disparate treatment here mr. Whitaker progressed through training month after month did not receive formal counseling on the issues that were later identified as reasons for his termination and therefore this court should find that the district court over stepped its bounds and let the case be remanded for trial by jury and I see my time is out thank you all right Miss Purdy I'll hear from you now Good morning your honors and Mr. Shaw may it please the court my name is Erin Purdy and I represent the appellee in this matter Howard County Maryland the district court for the District of Maryland properly granted summary judgment for Howard County Maryland in this case and today the county is respectfully asking this court to affirm that decision you're asking the court to affirm this decision because the district court correctly held that appellant failed to present sufficient evidence to generate a genuine dispute of material fact that his termination was based on anything but poor performance as this court stated in Henson an employer is entitled to summary judgment if the employee fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employers proper reasons for the alleged discriminatory act here mr. Whitaker was not meeting the legitimate expectations of the department how do we so how do we in terms of how does the court to handle these course certifications the firefighter one the firefighter two and I guess my I guess my more direct question is so he gets a on May the 18th there's this counseling report regarding the evolution mazes the ladder operations and his breathing equipment and then Sanchez recommends dismissing him on May the 18th in a memo to the deputy chief and notes that he's performing at a minimal level academically and he's that he's not able to embody the principle to which department hoses is his prospective Academy class graduates and then they give him notice of this and then on May the 21st he receives a certificate of completion for firefighter to I mean that's I mean that is a little contradictory for him to you know and on the 18th is these concerns we're gonna performing at the level that he needs to perform and then on May 21st it comes back and gives a certificate of completion from as a firefighter to I mean how are we to handle the conflict in that in those days I mean is that not an issue of fact for the jury to decide I think that if the court looks at the record as a whole that it does that there is contemporaneous documentation that mr. Whitaker was continuing to struggle with certain issues and that passing firefighter one and passing firefighter to show that he was able to do these discreet tasks the all of the objective measures that he had to pass or not in the record but there is an example of one of the firefighter one practicals he had to pass in and it shows that it was they were very discreet tasks setting up the ladder properly making sure that he can climb and it didn't it did not you did not have to do it in such a manner where some of these struggles would have prevented him from passing but then you can see that he continues to have these issues which are documented by the instructors for exact for example in the mazes while he passed while he struggles in the first maze and ends up passing on the second attempt when he goes into that live practical he's still exhibiting that same disorientation that you would see in the maze the maze is just a skill in the Academy to try to assess a firefighter's ability to then go into a structure not become disoriented find a fire and extinguish it is there like a firefighter three that actually measures the department's performance requirements why do just as a matter of common sense why do you have a system where you certify trainees as satisfactorily performing in these key training classes if they're not what is the point of a system like that I think the system well there there were nine or ten weeks left of the Academy so while I don't know that there was a firefighter three I think that I don't think there is I don't think there is either like he's basically he's maxed out he's good to go why do you have a system and I guess the real question is is there something in the record that would show why you have a system where you certify trainees as having satisfactorily performed if they're not meeting performance expectations well I think the Academy because he can he's going to continue for nine or ten more weeks I don't know that he was necessarily good to go like I think that the Academy builds on firefighter one and firefighter two in the manner that he was struggling for example actually combining all those skills as demonstrated in the live practicals and so there's no there's no live practicals for firefighter one or firefighter two I think you're getting into them in firefighter two as you can see oh right because that's how they know correct he has the problem under stress but he passed firefighter two notwithstanding his problems with stress I or the alleged problems with stress I just I guess I'm really just asking you I two questions just common sense like I mean I give performance reviews all the time it's not my custom to say good news you're meeting all the expectations and now you're fired because you failed to meet my expectations it just seems like a bizarre HR practice but I guess the real question is what is there in the record that would explain why this makes sense and in particular is there something in the record that says how often this happens is this a customary thing someone is certified as meeting expectations through firefighter one and firefighter two but then pushed out one way or the other before training is over does it happen all the time like oh sure like this constant this is just the way we run our program does it happen occasionally or is this the first time it's ever happened I don't think there's any evidence in the record I might draw an inference from that because I again just as a matter of common sense if in fact it happens regularly I do not understand why that's not in the record it's the key question in this case like how does this make sense that you can pass level two but still not be meeting expectations and if the answer is I know it seems a little weird you're not an HR expert this does make sense and here are all the times we've done this before why isn't it in the record yeah I don't think it was presented in the record I don't think that the record presented anything related to the composition of this class in terms of how many passed except for those discreet memos that showed some of the other performance issues well as a follow-up to judge Harris's question I mean what wouldn't it be very beneficial to the court to have the answer to this question how common is it for recruits who who have who achieve all the objective certifications but still be terminated or resigned you're telling us that there is no evidence of that fact of that of that scenario in this record I cannot I cannot point to any evidence in this record about whether all of the other well the train the trainees that completed the Fire Academy would have successfully passed and become firefighters like they would have successfully passed all the objective measures to become firefighters that's true but but but the question is they they they completed all the objective certifications but they still will terminate or asked to resign in words that gives us I guess what it troubles me like it does judge Harris I think if we had that information and we have we have kind of a graph that we can measure this thing against correct I don't think that that exists that in the record in that manner I know that there was a younger trainee whose recommendation to be excused from the program is in the record because he was struggling with a CBA and maze issues but he subsequently resigned as a district court noted it is a very the training class in and of itself is small in the general respect so I cannot I don't think there's any evidence in the record as to that type of statistical answers in terms of how many of those and trainees are going to not be successful it's all every trainee including mr. Whitaker mr. Whitaker's age was known at the time he was given this in the training Academy the training Academy gives out these spots with the hopes that each of those individuals is going to successfully complete the program and become firefighters there isn't so can I see a question about that so who hires who does the hiring in this question who picked him for the training program and is it the same people who pushed him out so the ultimate appointing authority and firing authority would have been chief Butler but as the deputy chief Smeltzer did discuss in his deposition that it's more of a panel it's a very large pool of 2,000 people and then it starts being whittled down and so the panel would ultimately have highly recommended or recommended mr. Whitaker there's no evidence in the record of which one he was at the time but it would have been a panel but of uniformed firefighters and some HR that would have been sent through a recommendation up to the fire chief okay so HR is involved with the hiring but not with the not in the with the decision here to terminate him from the program yes the decision for the firing would have been the recommendations of the training staff again after the chain of command ultimately to the fire chief can I see another question just something that concerned me a little bit about the the district court approach to this case so we have these comments by captains Welsh and the and Merson the Facebook page and I I track the district courts reasoning in saying these are not direct evidence but that doesn't mean they drop out of the case it's still circumstantial evidence that can be looked at when you do the McDonnell Douglas kind of burden shifting regime and see whether there's a circumstantial case here but the district court never comes back to them and you know we have clarified probably even more since the district court ruling that like that's a mistake you actually have to come back to them and consider them when you're looking at the pretext question the prima facie case the pretext question they go to the ultimate question in this case what do I do about that and do you have an argument for why that's not a problem in this case or well I think Captain Walsh's comment was not related at all to the termination in terms as the district court found and I don't know that it's very probative when you look at it in relation to all the contemporaneous documentation for the performance issues as to the Facebook page again I don't know that that's really evidence of corporate culture related to the culture at the department you know as I already stated and mr. Whitaker's age was known at the time he was given the spot in the Academy right but by a different if the hire and the fire are different that doesn't really give rise to much of an inference of anything and I am sort of struck by the fact that you have HR professionals on the hiring panel who but not on the fire you don't have the same hire and fire here so it doesn't really matter okay what I do I would argue that even if it's not the same hiring and firing authority that his age was known the only thing that wasn't known was how he was going to perform and firefighting tasks and so I don't think Captain Merson was saying that he couldn't do the job in fact he was just talking about again sort of the longevity of your career in relation to the pension so there was no evidence in the record that the department was not keeping older firefighters or you know taking agent age into account there was nothing in the record that showed that the department wasn't treating age neutrally and I'm not sure that the Facebook post you know meets that test either so just a couple additional points I do think that the record shows contemporaneous documentation that he was struggling and that there were skills that he was continuing to regardless of the passing the objective matters measures that he was struggling to complete even as he was progressing in the in the fire Academy additionally as Judge Floyd had mentioned even if there is a prima and it is shown that the department has legitimate decision-making reasons for the decision that was made I don't think mr. Whitaker can meet his burden for pretext one mr. Whitaker's own self-assessment does not carry his entire burden and additionally he doesn't dispute that some of these instances occurred he doesn't dispute failing the maze or the ladder and the first or second time he actually doesn't even dispute that he couldn't open the bail nozzle he couldn't find the fire that he couldn't get it to the right setting and all of these are indicative of what is needed when you come out of the fire Academy as captain Merson said in his deposition it's imperative that a firefighter can find the fire we're not talking about generalized office firefighting is hazardous this Academy is meant to prepare firefighters to go into the community be in stressful situations and rescue the citizens of County and I think that that isn't important when looking at the pretext issue additionally he has submitted evidence from the opinions of his fellow trainees but here the fellow trainees are not even the same as or narrate co-workers the trainees were in the Academy just like mr. Whitaker they had no other knowledge they in fact just offer generic comments like he was doing just as well as everyone else where in contrast you have the trained evaluators their whole job is to make sure that individuals are meeting the task and able to become firefighters so and I ask you about the this is just another sort of slight concern I had about this case you are right of course that our law says the fact that a bunch of your colleagues think you're great just doesn't account for much in the district court said that but there were places where the fellow trainees were not just offering in an opinion where they were making factual assertions that were contrary to some of what the employer was saying and I'm remembering there's one where there's this defiance issue that Sanchez raises and the trainee who was allegedly defied says well that actually didn't happen so I think there are cases where you are supposed to look at you not the opinions of your colleagues but when they testify as to a factual matter that can create a genuine dispute and I I am worried that we are painting with too broad a brush here when we say it really doesn't matter what the colleagues think I think that most of his colleagues says that he did not recall or not witness and being in subordinate but I'm not sure that they would have been I don't know that that's enough the conclusory opinions to just say that they're not sure and I believe that one of the trainees you DECA I believe did say that he witnessed mr. Whitaker pushing back he didn't call it insubordination and his deposition that's true but he said he did witness him pushing back okay but so just to be we agree though that when a fellow employee testifies as to a fact and not you know either this happened or it didn't happen this happened that way it happened that way that's relevant what what is less relevant minimally relevant if at all it's just their assessment that we thought this guy was pretty good and we but but if they are saying like I was there it didn't happen that way that is something that should be looked at yes I agree additionally when looking at pretext one of the one of the factors that the court can look at is whether the sort of consistency of the reasons that were offered and I know that appellant says that certain issues were not raised but I would disagree in fact one of the counseling forms does note that he had behavioral one of the boxes checked was behavioral that was the April 18th counseling form and I do think that the memos are fairly consistent that his his poor attitude and some of the stress related issues he was having carried through his performance at the department if the court has no further questions I would just say thank you and ask to affirm thank you very much and mr. Shaw you have some rebuttal to them mr. Shaw this is a summary judgment there's no magic number but could you just tell us one two three what are the material material facts that are in dispute in this case just one two three or just one or just two or history yes your honor so the first material fact that is in dispute is whether in fact mr. Whitaker underperformed at training there's different there's conflicting evidence in the record for example as to whether he failed a maze or if he did fail a maze whether that was indicative of poor performance and I will elaborate just a little further on that one there's testimony from the county by its corporate designee that it was common to fail mazes there also does seem to be evidence that on the first attempt at one given maze mr. Whitaker didn't pass it and then he rectified that and did pass it that's just an example of one factual dispute there's also factual disputes about the extent to which he had difficulty with ladders the extent to which he had difficulty with nozzles so that's one area that's very much in factual dispute and in fact in the appendix at pages 30 to 35 the district court spent five or six pages of its opinion sifting through all of these effects and then ultimately drew inferences apparently in favor of the county rather than letting a jury look at those same facts and decide whether it goes one way or the other. Well let me ask you just and then I'll let you continue to answer judge Floyd's but I mean there's something some of these things he's acknowledged that he that he had issues like the nozzle incident he I don't think that that's that there's a dispute regarding that because he didn't he acknowledge that he had issues with the nozzle removing the nozzle? Yes judge Benjamin he did acknowledge like for several of these issues the nozzle being one the maze being another that there were occasional issues that happened but we have to look at the record he for one thing he wasn't always counseled on those issues so the county has a formal process by which they give feedback and then the other issue is you know were other trainees having those same issues I mean this is a training environment so it's expected that trainees and the county's designee testified that in a training environment sometimes the trainee is going to miss the mark so again that's an area I believe where the jury could look at the conflicting evidence and decide that the reason that was given that mr. Whitaker had poor performance or couldn't perform well under stress was merely a pretext for getting him out of the department because he was older than all the other trainees in his class to judge Floyd's question yes there's other areas that where there are factual disputes and the big one here I think is going to miss Purdy's question about the record if we look at the internal memoranda that were given around the time or just prior to mr. Whitaker's termination those are internal memoranda from one trainer up the chain of command but not given to Whitaker so if we look at the April 16th memorandum and April 17th memorandums at 1146 and 1147 of the appendix sir internal memoranda and one of them does I believe actually say not that mr. Whitaker was insubordinate but that at 1146 the trainer says the action of not being able to navigate through the maze is not my concern so he's not concerned about the maze but he says the behavior that the trainee demonstrates went under a little stress is a concern for me okay so he's telling that to mr. to up his chain of command there's no evidence in the record that mr. Whitaker was told that that mr. Whitaker was told we're concerned that you have you're you're having difficulty with stress that's on April 18th three days later or sorry two weeks later approximately May 3rd 2018 they certify him at firefighter level one so again there's a huge glaring factual inconsistency here where the county is apparently in some circumstances without even mr. Whitaker's knowledge talking about things that are going on with his performance not giving him a chance to correct them as they did with other trainees this is consistent with you know the discussion in the briefs about mr. Whitaker being placed on desk duty and being forbidden to take part in training when that didn't happen to other employees so there's also a factual issue here regarding how he was treated vis-a-vis other employees and whether he was actually whether there were actually contemporaneous records of these issues or whether those are simply post hoc rationalizations for the county's desire to get mr. Whitaker out of the department and I see that my time has expired if the court has no further questions I thank you for your time great thank you very much thanks to both of you for scrambling to do this remotely we appreciate it we are sorry that we can't do our usual custom and come down and greet you personally but we hope that we will have occasion to see you soon so we can do that thanks very much thank you
judges: Pamela A. Harris, DeAndrea Gist Benjamin, Henry F. Floyd